# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

| | |
|---|---|
| JIMMY M. STONE, | No. CASE NO. C08-5742RJB |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| MICHAEL J. ASTRUE, Commissioner of Social Security Administration, | Noted for September 18, 2009 |
| Defendant. | |

This matter has been referred to Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by <u>Mathews, Secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976). This matter has been briefed, oral argument was heard on August 21, 2009, and after reviewing the record, the undersigned recommends that the Court affirm the administration's decision.

## INTRODUCTION AND PROCEDURAL HISTORY

Plaintiff Jimmy Stone was born in 1945. He completed high school and nearly completed a four-year college degree in anthropology/archaeology. Mr. Stone has also spent time in the Air Force, Reserves, and the Army. Plaintiff has worked several different types of

REPORT AND RECOMMENDATION - 1

jobs. Most recently, in 2001, he worked as a mechanic, restoring farm equipment. Plaintiff states that during the time he was working on the farm equipment he started having problems with his hands. Tr. 380-381.

Plaintiff filed an application for Disability Insurance Benefits on August 5, 2005. Tr. 76-78. Mr. Stone alleged disability beginning September 2, 2000, due to depression, bipolar disorder, and sleeplessness. Tr. 76 & 80. The onset date was later amended to January 1, 2002, and the court further notes Plaintiff did not allege disability due to bilateral hand pain, numbness, or weakness (Tr. 80), which was also later included or alleged at the administrative hearing. Tr. 385-89. Plaintiff claims he has been unable to work with other employees or customers because of severe mood swings, anger, depression, periods of lost sense of time and inability to sleep (Tr. 80). Plaintiff stated that his last job as a farm equipment mechanic ended because his ability to concentrate was becoming worse, and he could not find more work of the same nature. Tr. 80. Plaintiff further claims that his health conditions were becoming worse and he was unable to sleep. Id.

On February 12, 2008, the ALJ issued a decision applying the five-step sequential evaluation process and finding that Plaintiff was not disabled. Tr. 16-26. The ALJ found that "bilateral hand pain, numbness, and weakness" was a severe impairment, but also concluded Plaintiff retained the ability to perform past relevant work as a cashier/stocker, nursing assistant, census worker, short order cook, boat builder, and marine machinist. Tr. 18 & 25. Therefore, the ALJ found that Plaintiff was not disabled. On October 24, 2008, the Appeals Council denied Plaintiff's request for review (Tr. 4-6), making the ALJ's decision the Commissioner's final administrative decision.

REPORT AND RECOMMENDATION - 2

Plaintiff now seeks judicial review of the administrative decision. Plaintiff raises the following claims:

1. Whether the ALJ erred when she did not find that Mr. Stone had a severe mental impairment contrary to the findings of Frank Siebel, Psy.D. and the record as a whole; and

2. Whether the ALJ erred when she found that Mr. Stone's only severe impairment was "bilateral hand pain, numbness and weakness, but determined that he could lift and carry 50 pounds occasionally and 25 pounds frequently, and did not have fine or gross manipulative limitations."

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. Bayliss v. Barnhart, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir.1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir.1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. Id.

Plaintiff bears the burden of proving that he or she is disabled within the meaning of the Social Security Act (the "Act"). Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999). The Act

REPORT AND RECOMMENDATION - 3

defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Plaintiff is disabled under the Act only if his or her impairments are of such severity that he or she is unable to do her previous work, and cannot, considering his or her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

## DISCUSSION

*A. The ALJ Properly Determined that Plaintiff's Depression Was Non-Severe*

Step-two of the administration's evaluation process requires the ALJ to determine whether an impairment is severe or not severe. 20 C.F.R. §§ 404.1520, 416.920 (1996). The step-two determination of whether a disability is severe is merely a threshold determination of whether the claimant is able to perform his past work. Hoopai v. Astrue, 499 F.3d 1071, 1076 (9th Cir. 2007). A finding that a claimant is severe at step-two only raises a prima facie case of a disability. Id. *See also* Tackett v. Apfel, 180 F.3d 1094, 1100 (9th Cir.1999).

An impairment is "not severe" if it does not "significantly limit" the ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). The Social Security Regulations and Rulings, as well as case law applying them, discuss the step-two severity determination in terms of what is "not severe." According to the Commissioner's regulations, "an impairment is not severe if it does not significantly limit [the claimant's] physical ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 404.1521(a)(1991). Basic work activities are "abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." 20 C.F.R. § 140.1521(b); Social

Security Ruling 85-28 ("SSR 85-28"). An impairment or combination of impairments can be found "not severe" only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual's ability to work." Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988)(*adopting* SSR 85-28).

Here, the ALJ devoted a significant portion of her decision to address the issue of Plaintiff's alleged mental impairment(s). Tr. 19-22. In this context, the ALJ discussed Plaintiff's statements, his wife's statements, as well as the opinions and reports prepared by Dr. Havers, Dr. Johnson, Dr. Seibel, and the state agency consultants (Dr. Underwood and Dr. Bailey). After reviewing the evidence, the ALJ concluded that Plaintiff's mental impairments are non-severe. Tr. 22.

Plaintiff argues the ALJ erred when she did not find that Plaintiff had a severe mental impairment contrary to the finding of Dr. Siebel and the record as a whole. The court disagrees. The ALJ properly considered and chose to reject or discount portions of the testimony of Dr. Siebel, the state agency consultants, and Dr. Johnson. The ALJ's conclusion is supported by substantial evidence in the record.

Dr. Seibel, a psychologist, examined Plaintiff on March 10, 2005. Tr. 178-83. Plaintiff explained to Dr. Seibel that it was "really hard getting along with other people." Tr. 178. Dr. Seibel diagnosed Plaintiff with dysthymic disorder, late onset, and assigned a global assessment of functioning (GAF) score of 53, indicating moderate symptoms. Tr. 182. Dr. Seibel reported, "[Plaintiff] tried some medications and is currently taking Prozac. He reported having more control over his anger on Prozac and is able to change his mood by working on it. He was unable to do this before." Tr. 179. Dr. Seibel opined that the claimant could work part-time in a job that did not require him to interact with others a great deal (182-83). The state agency

REPORT AND RECOMMENDATION - 5

consultants, Dr. Bailey and Dr. Underwood, contemporaneously (in April 2005 and August 2005, respectively), recommended that Plaintiff could work around others, but not cooperatively with them and that he should work away from the public. Tr. 176. Finally, in 2007 Dr. Johnson found Plaintiff's global assessment of functioning ("GAF") score to be 51, similar to Dr. Seibel, who had assigned a GAF of 53, both indicating moderate mental limitations.

While an ALJ is responsible for resolving conflicts in the medical evidence (Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)), she may not substitute her own opinion for that of qualified medical experts (Walden v. Schweiker, 672 F.2d 835, 839 (11th Cir. 1982)). An ALJ may discredit specific portions or parts of a medical opinion that are not properly supported. *See* Fair v. Bowen, 885 F.2d 597, 605 (9th Cir.1989)(the ALJ was permitted to reject opinions and notes of a treating physician's which were based on a claimant's discredited subjective complaints). An ALJ has an obligation to explain why significant probative evidence has been rejected. Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir.1984)(The ALJ need not discuss all evidence presented, but must explain why "significant probative evidence has been rejected," *citing*, Cotter v. Harris, 642 F.2d 700, 706 (3d Cir.1981))

The ALJ properly chose to reject or discount each of the above discussed opinions, specifically with regard to Plaintiff's ability to function socially, based on Plaintiff's success with treatment and his activities of daily living. First, Plaintiff's treatment records in question – his use of Lexapro, Prozac, and Zoloft -- fully support the ALJ's evaluation. The records reflect that Plaintiff had significant improvement with the use of medications. For example, Plaintiff started taking Celexa in 2002, and shortly thereafter, he reported feeling more active and sleeping better. Tr. 192-93. In 2003, Plaintiff used Lexapro (both an antidepressant and anti-anxiety medication), and reported feeling good. Tr. 191. In March 2005, Plaintiff told Dr.

REPORT AND RECOMMENDATION - 6

Seibel that he had "more control over his anger on Prozac and is able to change his mood by working on it." Tr. 179. As of November 2005, Dr. Havers reported that Plaintiff's anger was controlled with medications (Tr. 208). Similarly, in December 2007, Dr. Johnson stated that medications appeared beneficial in managing Plaintiff's symptoms (Tr. 269).

ALJ specifically noted Plaintiff's activity level and Plaintiff's ability to interact with his family and cooperate with examiners. Tr. 19-22. Plaintiff reported several times being engaged in daily activities that do not support a finding of disability or a severe mental impairment. In Plaintiff's Function Report, dated November 2004, he stated that he gets himself dressed, listens to the news, review projects for the day with his wife, works on those projects, eats breakfast, lunch and dinner, reads and watches television. Tr. 106. He further stated that he was able to clean the house, do laundry, water and weed the garden, and perform household repairs. Tr. 108. Plaintiff visits his in-laws once a week or more. Tr. 110. He drives to go shopping and reports spending time during the day fixing a couple of boats. Tr. 181-82. Finally, Dr. Johnson noted his cooperation with the evaluation process. Tr. 295. The ALJ properly relied on these statements and Plaintiff's testimony at the hearing to discredit the opinions of Dr. Seibel, the state agency consultants and Dr. Johnson to support the conclusion that Plaintiff's mental limitations were only mild, and thus, non-severe.

At oral argument Plaintiff argued the ALJ committed legal error when she did not address all of the significant and probative evidence related to Plaintiff's impairments. The court has considered that argument, but finds that the evidence not commented upon or discussed by the ALJ was not significantly probative. In sum, substantial evidence was cited by the ALJ to support her findings and the court finds no legal error in the decision.

**B.     *The ALJ Properly Evaluated Plaintiff's Residual Functional Capacity***

"[R]esidual functional capacity" (RFC) is "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. § 404, Subpart P, App. 2 § 200.00(c) (emphasis added).  In evaluating whether a claimant satisfies the disability criteria, the Commissioner must evaluate the claimant's "ability to work on a sustained basis." 20 C.F.R. § 404.1512(a). The regulations further specify:  "When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis." Id. at § 404.1545(b).  If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.  20 CFR §§ 404.1527, 416.927.

Here, the ALJ found that Plaintiff had "the residual functional capacity to lift and carry 50 pounds occasionally and 25 pounds frequently, stand and walk six hours in an eight-hour workday, and sit six hours in an eight hour workday." Tr. 22.    The ALJ also found Plaintiff did not have any "fine or gross manipulative limitations" associated with his hand problems.  Tr. 22.

Plaintiff argues the ALJ erred when she failed to incorporate his allegedly "severe" hand impairment into his RFC.  This court disagrees.  Although the ALJ found Plaintiff's "bilateral hand pain, numbness, and weakness" was a severe impairment at step-two of the administrative process, substantial evidence referred to by the ALJ, including the medical evidence and Plaintiff's activities, supports the ALJ's residual functional capacity finding.

The ALJ properly relied on specific medical evidence to support her finding of no limitations caused by Plaintiff's hands.  The ALJ stated, "Although the claimant has a history of hand injuries, including injuring his right hand after breaking a plate of glass window when he was 20 years old and cutting his hand on some oyster shells while at work in 1988, the record

REPORT AND RECOMMENDATION - 8

indicates only intermittent hand problems and minimal objective findings (Exhibit 15F/1-2)." Tr. 23.

The medical record supports the ALJ's interpretation of the evidence. Plaintiff first complained of hand problems to Dr. Havers, who referred him for an evaluation in November 2005. Tr. 207-08, 224-26. The evaluation revealed no evidence of muscular atrophy, and Plaintiff demonstrated he had 5/5 strength in his left hand and 4/5 to 5/5 strength in his right hand. Tr. 225. In November 2007, Dr. Hutton, a neurologist examined Plaintiff, noting Plaintiff had grip strength of 41 kilograms (about 90 pounds) in his right hand and 39 kilograms (about 86 pounds) in his left hand. Tr. 283. The ALJ relied on these records and opinions to support her finding of no limitations caused by the "severe" impairment.

Similar to her reliance on Plaintiff's daily schedule and reported activities with respect to Plaintiff's mental impairments, the ALJ properly relied on these activities to find no limitations associated with Plaintiff's hand impairment. As noted above, Plaintiff engaged in activities that suggested a greater functional capability than alleged. For instance, Plaintiff reported that he worked on fixing and rebuilding boats. He cared for his personal needs, prepared simple meals daily, cleaned the house, did the laundry, watered the garden, pulled weeds, performed household repairs, drove a car, rode a bicycle, and shopped. Tr. 106-13; 181-82. His wife corroborated the evidence, reporting that Plaintiff fed and bathed the dog, prepared simple meals, cleaned, and did laundry. Tr. 114-22.

The Court notes the medical records and Plaintiff's activities could have probably been interpreted differently, i.e., in the manner plead by Plaintiff. However, it is worth repeating that while the court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. Thomas v. Barnhart, 278 F.3d 947, 954

REPORT AND RECOMMENDATION - 9

(9th Cir. 2002). Moreover, when the evidence is susceptible to more than one rational interpretation, as it may be in this matter, it is the ALJ's conclusion that must be upheld. Id.

### **CONCLUSION**

Based on the foregoing discussion, the Court should affirm the administrative decision. Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on September 18, 2009, as noted in the caption.

DATED this 25th day of August, 2009.

J. Richard Creatura
United States Magistrate Judge

REPORT AND RECOMMENDATION - 10